HELEN ELIZABETH WHITAKER *v.* FRED WHITAKER.

October Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed March 4, 1918.

*Divorce—Gross or Wanton and Cruel Failure to Support— P. S. 3068.*

In order to entitle a wife to a divorce for gross or wanton and cruel failure to support, under P. S. 3068, something more is required than mere desertion, though wilful, or simple neglect or refusal to support; a wife who bases her application upon this ground must establish some circumstance of indignity or aggravation characterizing the husband's conduct to bring her case within the terms of the statute.

In a proceeding for divorce on the ground of gross and wanton and cruel failure to support, the trial court dismissed the petition, and in the findings of fact stated that the defendant seduced the plaintiff, and, having failed to obtain her consent to an illegal operation, married her, remained with her for one night, and then left her, promising to pay for her board, but, although possessing funds, never contributed to her support, and that the plaintiff was in poor health and compelled to undergo an operation. The findings did not expressly state whether defendant's conduct was gross or wanton or cruel. *Held*, although it would ordinarily be assumed in support of the judgment that the trial court inferred

that the conduct was not of that character, under the circumstances, in the exercise of the discretion of the Supreme Court, the case would be remanded for a rehearing.

PETITION for divorce, on the ground that the libellee, although of sufficient pecuniary and physical ability so to do, without cause, grossly, wantonly and cruelly refused and neg· lected to provide suitable maintenance for libellant. The proceeding was uncontested. Trial at the June Term, 1917, Caledonia County, *Fish, J.,* presiding. After hearing, the court dismissed the petition. Libellant excepted. The opinion states the case.

*Dunnett, Shields & Conant* for libellant.

POWERS, J. This is an uncontested petition for divorce based upon an alleged neglect and refusal to support. The court below refused the application upon the sole ground that the facts shown constitute "nothing more than simple desertion." To this refusal plaintiff excepted.

The marriage, residence, service and the ability of the defendant, both physical and pecuniary, are found. It is also found that the defendant has wholly failed to support the plaintiff, and that she has been without fault. The only question before us is whether such failure to support was "gross," or "wanton and cruel" within the meaning of P. S. 3068.

That something more than mere desertion, though wilful, is required to entitle a wife to a divorce under this provision of the statute is too plain to require discussion. Equally plain is it that something more than simple neglect or refusal to support is necessary. Both of these propositions are firmly established and adhered to in this jurisdiction. *Mandigo* v. *Mandigo,* 15 Vt. 786; *Caswell* v. *Caswell,* 66 Vt. 242, 28 Atl. 988. To hold otherwise would be to ignore the qualifying terms of the statute. "Gross" means flagrant, shameful, not to be excused. Webster's Dict. So "Grossly" must mean flagrantly, shamefully, inexcusably. Accordingly, when gross· neglect of duty is made a statutory ground of divorce, it is held that the neglect must be so glaring, flagrant, shameful or monstrous as to be obvious to the common understanding and inexcusable under all the relevant facts. *Beauchamp* v. *Beauchamp,* 44 Okl. 634, 146 Pac. 30.

Without attempting to do more than state the rule broadly, it is safe to assert that a wife who bases her application upon the ground of nonsupport must establish some circumstance of indignity or aggravation characterizing the husband's conduct to bring her case within the terms of the statute. "Without doubt," says Judge Thompson in *Caswell* v. *Caswell, supra,* "under some circumstances, a sudden and continued refusal to provide the necessaries of life to a wife who is thereby left to her own earnings, would be within the statute meaning of 'grossly or wantonly and cruelly' refusing or neglecting to support; as where, from the previous habits or mode of life, or state of health, or incapacity to labor from any cause, such conduct would cause injury to health or danger of such injury, or reasonable apprehension thereof. So, too, the refusal might be made in such a manner, or coupled with such indignity or aggravation as, in and of itself, to be a gross or wanton and cruel refusal or neglect to support the wife." We have quoted this language at some length as it is taken almost literally from *Peabody* v. *Peabody,* 104 Mass. 195.

The findings show that these parties had sexual intercourse before they were married. The plaintiff was then fifteen years old and the defendant was twenty-one. The plaintiff was advised by her physician that she was pregnant, and believing this to be true, she informed her mother of the fact. The mother talked it over with the defendant, who proposed to take the girl to New York and have an illegal operation performed. This was refused. He then expressed a willingness to marry the girl, and they were married, the mother consenting. At this time the plaintiff was living in the family of a stepfather. The defendant stayed with his wife one night only, and within a week left for a distant part of the state,—the plaintiff remaining with her mother under a promise by the defendant to pay her board. He had inherited something over two thousand dollars about seven years before this marriage, which inheritance was then turned over to a guardian. There is nothing to show that this money or any substantial part of it had been used up. He claimed and appeared to have money, and from time to time had checks for substantial sums. He never paid for his wife's board and never contributed to her support, though she repeatedly called upon him by telephone and by mail to do so. Soon after her marriage, the plaintiff learned that she was not in

the family way, but whether she so informed the defendant does not appear. Shortly after the latter left her, the stepfather told the plaintiff that she could stay at his house but two weeks longer, and she called up the defendant and told him about it and asked him to provide a place for her, expressing a willingness to go to any place he might select. She has been in poor health since the marriage, and underwent an operation at an expense of over a hundred dollars. When able, she has worked out as a domestic, and at other times has been dependent on relatives and friends.

These facts are abundantly sufficient to warrant the inference that this defendant, having seduced this child, and having failed to get her to consent to an illegal operation to produce abortion, married her to escape bastardy proceedings or a prosecution for a statutory rape, or both, then intending to desert her and leave her to shift for herself and her expected child; and when she was about to be driven into the street, he turned a deaf ear to her appeals, and left her broken in health and an object of charity.

The court has not expressly found whether the defendant's conduct was gross, or wanton and cruel. Ordinarily, we should, in support of the judgment, assume that the trial court inferred that it was not of that character. But in the circumstances shown, it seems to have been flagrant, shameless and inexcusable, and affords such evidence of gross, or wanton and cruel neglect that we think that the case should go back for an express finding on the vital question. So, without saying that the findings require a decree for the plaintiff as matter of law, we shall, in the exercise of our undoubted discretion in such cases, remand the case for a rehearing. This result is fully justified by *Canning* v. *Canning*, 88 Vt. 522, 39 Atl. 259.

*Decree reversed, pro forma, and cause remanded for new trial.*